IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER TWELVE |
| | : | |
| MARK J. POWELL | : | BANKRUPTCY NO.: 5-10-bk-06255-JJT |
| DEBTOR | : | (Jointly administered) |
| | : | |
| IN RE: | : | |
| | : | |
| POWELL DEVELOPMENT COMPANY, | : | |
| INC., f/d/b/a POWELL FARMS | : | |
| DEBTOR | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MARK J. POWELL and | : | |
| POWELL DEVELOPMENT COMPANY, | : | |
| INC., f/d/b/a POWELL FARMS | : | |
| MOVANTS | : | |
| | : | |
| vs. | : | {**Nature of Proceeding**: Amended Motion |
| | : | to Avoid Oil and Gas Lease (Doc. #78)} |
| ANADARKO E&P COMPANY, L.P., its | : | |
| heirs, assigns and successors in interest; | : | |
| CHESAPEAKE APPALACHIA, LLC, its | : | |
| heirs, assigns and successors in interest; | : | |
| STATOILHYDRO USA ONSHORE | : | |
| PROPERTIES, INC., its heirs, assigns and | : | |
| successors in interest; and | : | |
| WILLIAM G. SCHWAB, TRUSTEE, | : | |
| RESPONDENTS | : | |

# **OPINION**

The Debtor and his spouse, Mark and Heather Powell, own 62.22 acres of property in

Bradford County, Pennsylvania. On August 2, 2006, Anadarko E&P Company LP and the

Powells supposedly entered into an oil and gas lease for their property.[1] Anadarko assigned a

portion of its interest to Chesapeake Appalachia, L.L.C., which further assigned a portion to

StatoilHydro USA Onshore Properties, Inc. Collectively, they will be referred to as Lessees.

---

[1]  None of the copies of the lease submitted to the Court bear a signature purporting to be authorized by
Anadarko. Nevertheless, this has not been raised as an issue by the parties.

Debtor filed for relief under Chapter 12 of the Bankruptcy Code on July 30, 2010. On May 18, 2011, the Debtor filed a Motion to "reject and void" the oil and gas lease under § 365(d)(4) of the Bankruptcy Code, alleging that the current lease was dramatically undervalued. (Doc. #74.)

On July 7, 2011, pursuant to the terms of the original lease, Anadarko attempted to extend the primary term of the lease for an additional five years by unilaterally tendering a check to the Debtor. (Debtor's Exhibit 3.) This occurred after the bankruptcy was filed and without obtaining relief from the automatic stay.

Objections to the effort to reject the oil and gas lease have been filed by both Anadarko and Chesapeake. The basis of the objections is that an oil and gas lease is neither an executory contract nor a lease as that term is used in the Bankruptcy Code and, therefore, cannot be rejected.

Under 11 U.S.C. § 365(a), a trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. Of course, in order for § 365 to be applicable, the instrument in question must either be a lease or an executory contract.[2] This raises some intriguing issues involving the intersection of state property law and bankruptcy law.

An oil and gas lease is a peculiar instrument wherein an exploratory company contracts to search for oil and gas on the lands of another. It typically includes a right to search, a right to drill, a right to transport, and the right to sell whatever oil and gas are found as a result on payment of a royalty. The owner of the land typically retains use of the surface. While the activity rarely changes, the legal vehicles by which this all transpires can vary greatly.

> Since 1859, when oil in paying quantities was discovered in this state, there have been many and radical developments in the industry with

---

[2] The Debtor posits that the agreement is not a lease. See Debtor's Brief in Support at 2 n.2 (Doc. #144).

Case 4:10-bk-06255-JJT   Doc 204   Filed 09/18/12   Entered 09/18/12 14:19:25   Desc
Main Document     Page 2 of 8

corresponding changes in the contracts employed to define the respective rights of land owners and operators and the laws and decisions have kept pace with these advances. All these contracts are in common parlance referred to as leases. Many of the early contracts were mere licenses, some exclusive and others not so. *Funk v. Haldeman*, 53 Pa. 229. These were followed by contracts having many of the characteristics of ordinary leases, being in the form of a lease of the land for the purpose of operating for and producing oil and gas. *Duke v. Hague*, 107 Pa. 57; *Brown v. Beecher*, 120 Pa. 590, 15 A. 608. While the early leases were usually for fixed periods, frequently five to twenty years, as it was discovered that the oil could not often be exhausted in those periods these leases came to be drawn for fixed periods and as long thereafter as oil or gas was found in paying quantities. These were followed by grants of the oil for like periods with the same covenants as were found in an ordinary lease. Then there were absolute conveyances of oil and gas in fee simple without reservations or restrictions. When leases were made of land for a definite number of years for the purpose of exploring for and producing oil and a royalty was reserved to the lessor, the interest of the lessees was held to be an interest in land, a chattel real, 'but none the less a chattel.' *Brown v. Beecher*, *supra*, 120 Pa. page 603, 15 A. page 609; *Titusville Novelty Iron Works' Appeal*, 77 Pa. 103, 107. A mere license to remove the oil was held to be an incorporeal hereditament.

*Appeal of Baird,* 334 Pa. 410, 411, 6 A.2d 306, 310 (Pa.1939).

Specific to Pennsylvania, state law allows for multiple options springing from the fact that there are three discrete estates in land, i.e., the surface estate, the mineral estate, and the right to surface support. *Hetrick v. Apollo Gas Company*, 415 Pa.Super. 189, 195, 608 A.2d 1074, 1077 (1992). In Pennsylvania, a mining agreement is "a sale absolute, a conditional sale, a lease in the ordinary acceptance of that term, or a mere license to mine and remove the minerals." *Hummel v. McFadden*, 395 Pa. 543, 553-54, 150 A.2d 856, 861 (Pa.1959). In opening the land for exploration, the landowner typically will authorize the exploration entity to enter the land and transport the mineral by license, land rental (traditional lease), easement or right of way. This is somewhat distinct from the manner in which the mineral, e.g., coal, gas, or oil, is transferred to the exploration company. Traditionally, an outright sale of the mineral is an option. Should it be the case that the mineral was transferred prior to the bankruptcy, then an essential element of the contract, the conveyance of the mineral, may no longer be executory as

that term is explained by the Supreme Court and our Third Circuit Court of Appeals. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522–26, 104 S.Ct. 1188, 1194 n.6, 79 L.Ed.2d 482 (1984) and *Sharon Steel Corp. v. National Fuel Gas Distribution Corp*., 872 F.2d 36, 39 (3rd Cir. 1989). *Bildisco* and *Sharon Steel* embraced Countryman's definition of executory contract, i.e. "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Professor Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973). On the other hand, should the fee estate in the mineral not have changed hands from the owner of the fee, then it appears that the provisions of § 365 may come into play. While the form of the instrument may be a lease, that factor is not controlling, rather it is its character. *Hummel v. McFadden,* 395 Pa. at 555. Even a lease which limits the lessee to a removal of the minerals over a term of years does not make the instrument any less of a sale. *Id.* at 566 n.8. A key to the character of the instrument can be found in its language. For example, a grant of the privilege for digging and boring for oil for a certain term is a lease for the production of oil and not a sale of the oil or an interest in the land. *Duffield v. Hue,* 129 Pa. 94, 108-109, 18 A. 566, 568 (Pa.1889). On the other hand, a lease of coal in place together with a right to mine for a royalty and remove it vests in the lessee a fee estate. *Smith v. Glen Alden Coal Co.,* 347 Pa. 290, 301, 32 A.2d 227, 233 (1943).

Overlaying this analysis is the reality that there are "marked differences in the nature of oil and gas and solid minerals" affecting the lessees' rights. *Appeal of Baird*, 334 Pa. 410, 6 A.2d 306, 311 (1939). As aptly put by one author, "[o]il and gas in their natural state are migratory and tend generally to move toward areas of lesser pressure. As a result, the oil and gas under one tract may be drained by a well on another tract overlying the same reservoir. Traditional property concepts are difficult to apply in this context. Can one be said to 'own'

something that is not necessarily quantifiable and to which one's neighbor can gain legal title by 'capture'?" Wayne C. Byers, Timothy N. Tuggey, *Oil and Gas Leases and Section 365 of the Bankruptcy Code: A Uniform Approach,* 63 Am. Bankr. L.J. 337, 338 -339 (1989). It is this very anomaly – the fluidity associated with oil and gas – that appears to have motivated the Pennsylvania Supreme Court to construct a special interpretation of an oil and gas lease as conveying a title that is inchoate and allowing exploration only until oil or gas is found, regardless of the linguistics used in the lease. *T.W. Phillips Gas and Oil Co. v. Jedlicka,* 42 A.3d 261 (Pa.2012). "If development during the agreed upon primary term is unsuccessful, no estate vests in the lessee. If, however, oil or gas is produced, a fee simple determinable is created in the lessee, and the lessee's right to extract the oil or gas becomes vested." *Id*. at 267. Vesting is critical to the analysis, since the "vesting" is that of a fee simple determinable[3] which terminates the executory nature of the contract and takes this interest, be it license, lease, or other and converts it to a real property interest in the mineral estate. It has generally been observed that § 365 does not apply to a real property interest or freehold estate. *Matter of Topco, Inc*., 894 F.2d 727, 740 (5th Cir. 1990).

Whether an oil and gas lease is a true lease is a matter of state law. *In re Pillowtex, Inc*., 349 F.3d 711, 715 (3rd Cir. 2003). Nevertheless, for purposes of § 365(d)(4), "leases of real property shall include any rental agreement to use real property." 11 U.S.C. § 365(m). Whether a contract constitutes an unexpired lease subject to 11 U.S.C. § 365 is a matter of state law. *Matter of Topco, Inc.,* 894 F.2d 727, 740 n.17 (5th Cir. 1990), *In re Harris Pine Mills*, 862 F.2d 217 (9th Cir. 1988). Whether the instrument is an executory contract is a matter of federal

---

[3] "A fee simple determinable is an estate in fee that automatically reverts to the grantor upon the occurrence of a specific event. The interest held by the grantor after such a conveyance is termed 'a possibility of reverter.' Such a fee is a fee simple, because it may last forever in the grantee and his heirs and assigns, 'the duration depending upon the concurrence of collateral circumstances which qualify and debase the purity of the grant.'" *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d at 267(citations omitted).

law.  *In re Terrell*, 892 F.2d 469 (6ᵗʰ Cir. 1989); *Cameron v. Pfaff Plumbing and Heating, Inc.*,

966 F.2d 414 (8ᵗʰ Cir. 1992); *In re Cochise College Park, Inc.,* 703 F.2d 1339 (9ᵗʰ Cir. 1983); *In*

*re Streets & Beard Farm Partnership*, 882 F.2d 233 (7ᵗʰ Cir. 1989).

Some courts have assumed that an oil and gas lease is an executory contract.  *In re*

*Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 381 (5ᵗʰ Cir. 1987) ("Any party to an

'executory contract,' such as a long-term supply contract *or an oil and gas operating agreement*,

may similarly obtain from the debtor full performance plus additional "assurance" as the quid

pro quo for continued dealings.") *King v. Baer,* 482 F.2d 552 (10ᵗʰ Cir. 1973)(emphasis mine).

Other courts have considered an oil and gas lease a transfer of an interest in real property and

therefore not an executory contract.  *Laugharn v. Bank of America Nat. Trust & Savings Ass'n,*

88 F.2d 551 (9ᵗʰ Cir. 1937).  This is the argument of the Lessees who advance that Pennsylvania

law classifies an oil and gas lease as a transfer of realty relying on *Lesnick v. Chartiers Natural*

*Gas Co.,* 889 A.2d 1282, 1284 (Pa.Super. 2005).  *Lesnick*, however, has been superceded by the

Pennsylvania Supreme Court, which illuminated this area of the law in the *T.W. Phillips Gas and*

*Oil Co.* case by explaining that this type of "lease" is in the nature of a contract and controlled by

the principles of contract law.  *T.W. Phillips Gas and Oil Co. v. Jedlicka,* 42 A.3d at 267.  That

court concluded, until oil or gas is produced, no freehold estate vests in the lessee.  Logically

then, if, at the time bankruptcy was filed and there was no oil or gas produced – as is true in this

case – then contract principles would apply including an interpretation of whether this was an

executory contract or lease.[4]

---

[4]  Complicating this filing was the fact that, post bankruptcy filing, oil and gas was found on neighboring lands, and a pooling agreement (Wygrala Unit) was recorded on August 31, 2011, (Debtor's Exhibit 4), that, but for bankruptcy, would have vested the oil and gas interest associated with the Debtor's property into the lessees.  It was this single activity occurring during the initial exploratory phase of the lease that allows the inchoate interest of the lessees to vest into a freehold estate; however, it is the very activity that is void as to estate property by § 362(a)(3) of the Bankruptcy Code since it works a transfer of possession of property of the estate.

The determination of whether an oil and gas lease is an executory contract is no easy task. It must be ascertained whether the terms of this contract are consistent with the Countryman definition of executory contract. Are the obligations of each side to the contract so far unperformed that the failure of either to perform would be a material breach? This resolution becomes somewhat problematic since the lessor's obligation is simply to deliver access to the property and refrain from interfering with the lessee's rights to explore, etc. A Louisiana Court, despite acknowledging the passive nature of the lessor's role, has concluded that the contract is indeed executory. *Texaco Inc. v. Louisiana Land and Exploration Co.,* 136 B.R. 658, 668 (M.D.La. 1992). An Oklahoma Court decided otherwise. *In re Clark Resources, Inc*., 68 B.R. 358 (Bkrtcy.N.D.Okl. 1986). I venture to say, however, that this distinction is not critical since clearly, and I don't use that word lightly, the oil and gas lease before me is an agreement "to use real property" and thus falls within the bankruptcy definition of lease of real property. 11 U.S.C. § 365(m). See also *In re Gasoil, Inc.,* 59 B.R. 804 (Bkrtcy.N.D.Ohio 1986). Had gas been discovered prior to the bankruptcy filing, the conversion of the instrument to a determinable fee would have terminated its qualification as a "lease" under § 365 because the Lessees would have had the *right* to extract *their* gas from the Debtor's property. Moreover, if gas had vested in Lessees prior to bankruptcy filing, the executory nature of the contract would cease, and we, again, would be talking about the law of real property rather than an executory contract.

Having concluded that the Debtor is a party to an unexpired lease, I now turn my attention to whether such lease should be rejected per the Debtor's request under § 365(a). Rejection is subject to the Court's approval. The Debtor certainly has no absolute right to rejection. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). This is where the Debtor's record comes up short. No evidence was submitted to suggest that this Court should approve either the rejection or the assumption of the lease. While

the Debtor's Motion implies the ability to renegotiate a lease for a higher return, no evidence was placed on the record suggesting that such is the case.

Furthermore, this approach glosses over the subtleties of lease/contract rejection versus outright avoidance. It is assumed from case law that "rejection does not alter the substantive rights of the parties to the lease." *In re Flagstaff Realty Associates,* 60 F.3d 1031, 1034 (3rd Cir. 1995), quoting from *In re Chestnut Ridge Plaza Associates, L.P.*, 156 B.R. 477, 483 (Bankr.W.D.Pa. 1993). Under § 365(h) of the Bankruptcy Code, rejection would not appear to oust the Lessees from their rights to occupy the premises.

The short of it is that, whether the oil and gas lease is considered an unexpired lease or an executory contract, the Debtor has demonstrated no justification for rejection and no authority for avoidance.

An Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge

(CMS)

Date: September 18, 2012